IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| ChartSpan Medical Technologies, Inc., | ) | C/A No. 6:19-cv-02599-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| First Care Medical Clinic, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on ChartSpan Medical Technology, Inc.'s ("Plaintiff") Motion for Summary Judgment. ECF No. 53. First Care Medical Clinic, Inc. ("Defendant") filed a Response in Opposition. ECF No. 58. Plaintiff filed a Reply to Defendant's Response. ECF No. 59. For the reasons set forth below, the Motion is denied.

## **BACKGROUND**

Plaintiff is a chronic care management ("CCM") service provider located in Greenville County, South Carolina that delivers managed care coordination programs for physician practices. Defendant is a comprehensive primary care and urgent care medical center located in Monroe, North Carolina.

Plaintiff brings this action against Defendant for breach of contract based on a service agreement ("the Agreement") entered between the parties, in which Plaintiff agreed to provide certain CCM Services to eligible and enrolled First Care patients in exchange for monthly per patient fees. ECF No. 1. Defendant alleges a counterclaim for

breach of contract. ECF No. 14. The Agreement states that Plaintiff "will provide chronic care management services . . . to [Defendant's] patients who (i) qualify for the services, (ii) are approved by the [Defendant], and (iii) consent to receive the [CCM] Services." ECF No. 53-2 at 2. The Agreement specifies in Exhibit A that the CCM Services may include comprehensive care management, structured recording of patient information, 24/7 access and continuity of care, patient care summary, management of care transitions, home- and community-based care coordination, and enhanced communication opportunities. *Id.* at 3.

The Agreement further provides that Defendant "will be charged a monthly per patient fee for [CCM] Services provided to [Defendant's] patients," and Plaintiff "shall credit Per Patient Fees to [Defendant's] account for any [CCM] Services that fail to meet the definition of Services in Exhibit A." *Id.* at 2. However, it also states that Plaintiff "may, at its discretion, issue credits for Per Patient Fees to [Defendant] if the [CCM] Services are not performed in accordance with this Agreement," for example, if Plaintiff fails to provide CCM Services to the minimum time threshold or fails to properly obtain a patient's consent. *Id.* at 4. The Agreement also states that Plaintiff "will rely on [Defendant] for information about patients which can have an impact on CMS[1] reimbursement" and "will not issue a credit to [Defendant] for denied claims." *Id.*

Moreover, the Agreement provides that Defendant "is responsible for approving a list of eligible patients that [it] wishes to receive the CCM Services"[2] and Defendant must

---

[1] CMS stands for "Centers for Medicare and Medicaid Services." *See* Centers for Medicare & Medicaid Services, http://www.cms.gov (last accessed Oct. 6, 2021).

[2] The Agreement states the eligibility requirements are established by CMS and currently include the following: (1) patient has had a qualifying evaluation and

2

reimburse Plaintiff "for Per Patient Fees associated with rendering the CCM Services even if a patient is ultimately determined to be ineligible [for] CCM Services." *Id.* The Agreement further places the burden on Defendant to inform Plaintiff when a patient receiving CCM Services has one or more disqualifying conditions and requires Defendant to pay for any CCM Services rendered prior to Defendant informing Plaintiff of a patient's disqualification. *Id.*

In its Complaint, Plaintiff alleges that it provided the agreed-upon services as set forth in the Agreement from January 1, 2018, through September 30, 2018, and billed Defendant on a monthly basis. ECF No. 1 at 2. Plaintiff contends Defendant failed to pay several of the invoices and ignored multiple communications from Plaintiff requesting payment for the outstanding amounts. *Id.* Plaintiff claims it wrote a final notice to Defendant by letter dated June 13, 2019, demanding payment in the amount of $107,766.87 to be made by July 15, 2019. *Id.* Plaintiff asserts Defendant's continued failure and refusal to pay the charges for the CCM Services rendered constitutes a material breach of the terms and conditions of the Agreement. *Id.* at 3.

In contrast, Defendant asserts a counterclaim for breach of contract, alleging Plaintiff failed to provide certain CCM Services to Defendant's eligible patients and instead provided CCM Services to deceased or otherwise ineligible patients. ECF No. 14 at 3. Specifically, Defendant asserts Plaintiff billed for CCM Services that were not provided to 13 patients on 13 separate occasions. *Id.* at 5. For example, Defendant

---

management (E/M) visit within 12 months of beginning CCM Services; (2) patient has two or more chronic conditions expected to last 12 months or until the death of the patient that place the patient at significant risk of death, acute exacerbation/decompensation, or functional decline; and (3) patient may only have one CCM provider. ECF No. 53-2 at 4; ECF No. 53-9 at 5.

claims Plaintiff reported communicating with patients when it had not in fact communicated with them and billed for creating a care plan for patients and never discussed the plan with them. *Id.* at 5–6. Defendant also argues that it notified Plaintiff that it was providing CCM Services to ineligible patients, but notwithstanding the notice, Plaintiff continued to bill for CCM Services purportedly provided to patients who were dead, in hospice, or otherwise ineligible to receive the services, and in doing so, billed for both complex and regular CCM services in contravention of the Agreement. *Id.* at 3. Defendant further contends that when it notified Plaintiff of its billing and reporting errors, Plaintiff promised to adjust the invoices, but it never did so. *Id.* at 6.

Plaintiff filed a Motion for Summary Judgment on its breach of contract claim and Defendant's counterclaim on April 16, 2021. ECF No. 53. Defendant filed a Response in Opposition on May 12, 2021. ECF No. 58. Plaintiff filed a Reply to Defendant's Response on May 19, 2021. ECF No. 59. Following briefing by the parties, the Motion is now before the Court.

## APPLICABLE LAW

### *Summary Judgment Standard*

Rule 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and

4

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine

> dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce evidence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Plaintiff argues that it is entitled to summary judgment on its breach of contract claim because the Agreement is clear and unambiguous as to Defendant's obligation to pay Plaintiff for CCM Services, and Defendant breached the Agreement by failing to pay the fees owed, resulting in damage to Plaintiff.  ECF No. 53 at 17–18.  Plaintiff further contends it is entitled to summary judgment on Defendant's counterclaim for breach of contract because the claim is based on Plaintiff's alleged failure to follow the Medicare Guidelines, which, in Plaintiff's view, do not require what Defendant purports, and regardless, Plaintiff claims it is bound only by the terms of the Agreement.  *Id.* at 31.

Defendant contends that genuine issues of material fact exist regarding Plaintiff's breach of contract claim, which preclude the grant of summary judgment.  ECF No. 58 at 11.  Specifically, Defendant argues the question of whether Plaintiff's performance of CCM Services under the Agreement complied with the Medicare Guidelines and industry standard raises genuine issues of material fact.  *Id.*  Defendant claims the Agreement relies on the Current Procedural Terminology ("CPT") Code definitions in the Medicare Guidelines but does not detail the continued obligations of the healthcare provider during the delivery of CCM Services.  *Id.* at 12.  The Agreement recognizes CPT Code 99490 is defined as

> Chronic care management services, at least 20 minutes of clinical staff time directed by a physician or other qualified health care professional, per calendar month, with the following required elements:
>
> - Multiple (two or more) chronic conditions expected to last at least 12 months, or until the death of the patient.
> - Chronic conditions place the patient at significant risk of death, acute exacerbation, decompensation, or functional decline.
> - Comprehensive care plan established, implemented, revised, or monitored.
>
> Assumes 15 minutes of work by the billing practitioner per month.

ECF No. 58-3 at 2; *see* ECF No. 53-2 at 3–4. Under the element regarding comprehensive care plan, Defendant alleges Plaintiff had an obligation to contact or communicate each month with patients when providing CCM Services. ECF No. 58 at 13. Defendant further contends Plaintiff provided CCM Services to certain of Defendant's patients without verifying whether there had been an initiating visit with the billing provider or that the requisite consent had been given. *Id.* at 2. Defendant also claims Plaintiff billed for services provided to ineligible patients who were dead, in hospice, or hospitalized. *Id.* at 2. Moreover, Defendant asserts that it notified Plaintiff of its billing and reporting errors, Plaintiff agreed to adjust the invoices to reflect the correct services provided, but no adjustment to the billing was ever completed. *Id.* at 3. Accordingly, Defendant argues there are genuine issues of material fact regarding Plaintiff's performance under the Agreement, and the Motion for Summary Judgment should be denied.

In response, Plaintiff argues Defendant's affirmative defenses fail because it was Defendant's responsibility to notify Plaintiff of any patient's ineligibility, and where CCM

Services were rendered to an ineligible patient prior to any such notification, Defendant remained responsible for payment for the services, even though Defendant would not be reimbursed by Medicare. ECF No. 53 at 19–20. Plaintiff claims that it could choose to issue credits at its discretion and further alleges Defendant has failed to produce any evidence that Plaintiff continued to provide CCM Services to ineligible patients after it had been informed of their disqualification. *Id.* at 19, 30.

Moreover, Plaintiff contends the Agreement does not require it to communicate monthly with patients receiving CCM Services. *Id.* at 21–22. Plaintiff also claims monthly communication is not required by the Medicare Guidelines, as Defendant alleges, because of the plain language of the CPT Code requirement to establish, implement, revise, and monitor a comprehensive care plan. *Id*. at 23; *see* ECF No. 53-9 at 7 (noting contact with the patient every month is not necessary to bill for CCM Services). Plaintiff further claims the requisite consent required to provide CCM Services had already been obtained as to Defendant's prior enrolled patients and new consent was not required. ECF No. 53 at 27; *see* ECF No. 53-7 at 2 (78 Fed. Reg. 74414, 74424 (Dec. 10, 2013) (noting "the informed agreement process need only occur once at the outset of furnishing the service . . . and that it only needs to be repeated if the beneficiary opts to change the practitioner who is delivering the services")).

After fully considering the arguments of the parties and the exhibits offered in support of same, the Court finds there are genuine issues of material fact as to whether Plaintiff satisfied its duty of performance in providing CCM Services related to the subject CPT Code as required by applicable Medicare regulations or guidance. Even accepting Plaintiff's argument that the Agreement is clear and unambiguous, genuine issues of

material fact exist regarding its billing for services not performed and its purported failure to give promised credits. Although several of the Agreement's provisions seem to unambiguously outline the parties' respective duties, other provisions appear to be so broad or vague that it is unclear what was in fact required of the parties under certain circumstances. Indeed, questions remain as to whether Plaintiff's delivery of CCM Services to Defendant's enrolled patients satisfied its obligations under the Agreement and whether Plaintiff's continued monthly billing for CCM Services when a patient was no longer eligible to receive them due to death, hospice, or other disqualifying conditions constituted a breach of the Agreement's terms. Because genuine issues of material fact exist, Plaintiff's Motion for Summary Judgment on its breach of contract claim and Defendant's counterclaim must be denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [53] is **DENIED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

October 15, 2021
Spartanburg, South Carolina